# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

JOSÉ ORLANDO TORRES-CRUZ,

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

CIVIL NO.  25-1408 (HRV)

## OPINION AND ORDER[1]

José Orlando Torres-Cruz ("Plaintiff" and/or "Mr. Torres-Cruz") seeks review of the final administrative decision of the Commissioner of Social Security ("the Commissioner") that denied his claim for disability benefits under the Social Security Act ("the Act"). The Commissioner argues in his brief that the decision should be affirmed because it is supported by substantial evidence. After careful consideration of the record, and for the reasons outlined below, the Commissioner's decision is AFFIRMED.

## I.    LEGAL FRAMEWORK

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), any individual may obtain review of a final decision of the Commissioner. Under said statutory provision, the Court is empowered

---

[1]    Eduardo Martín-Quiñones, a second-year law student at the Inter American University of Puerto Rico School of Law, provided significant assistance in the research and drafting of this Opinion and Order.

1

"to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." *Id.* In addition, the statute provides that if supported by substantial evidence, the findings of the Commissioner as to any fact, shall be conclusive. *Id.*

A reviewing court must uphold the decision of the Commissioner as long as the Administrative Law Judge ("ALJ") applied the correct legal principles, and the determination is supported by substantial evidence. *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). The scope of my review is, therefore, limited. I am tasked with determining whether the ALJ employed the proper legal standards and focused facts upon the proper quantum of evidence. *See Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000); *see also Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).

To meet the evidentiary benchmark, more than a scintilla of evidence is required. *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018). But the threshold for evidentiary sufficiency is not particularly high; if after looking at the existing administrative record, the court is persuaded that it contains sufficient evidence to support the Commissioner's factual and legal determinations, the decision is bound to be affirmed. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019); *see also Mosconas v. Saul*, No. 19-2049, 2020 WL 6255298, 2020 U.S. App. LEXIS 33755, at *2 (1st Cir. Sept. 15, 2020) (citation omitted) ("Substantial evidence does not require preponderant evidence; it merely requires evidence that reasonably supports the finding on the record as a whole.") Indeed, substantial evidence exists "if a reasonable mind, reviewing the evidence in the record, could accept it as adequate to support [the] conclusion." *Irlanda-Ortiz v. Sec'y of Health*

*& Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). The ALJ's decision must be reversed, however, if it was arrived at "by ignoring evidence, misapplying law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**B.      The Five-Step Sequential Evaluation Process**

To be eligible for social security benefits, a claimant must demonstrate that he or she is "disabled" within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 (1987). The Act defines disability in pertinent part as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(a) and 1382c(a)(3)(A). The impairment or impairments must be severe enough that "he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists [in significant numbers] in the national economy...." *Id.*, § 423(d)(2), § 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1520(a)(1).

The Commissioner follows a five-step evaluation process to determine disability. *See Mills v. Apfel*, 244 F.3d 1, 2 (1st Cir. 2001); 20 C.F.R. § 404.1520(a). These steps must be followed in order, and if a person is determined not to be disabled at any step, the inquiry stops. *Id*. The Plaintiff has the burden of proof at the first four steps of the process. *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001).

Step one considers work activity, that is, whether the Plaintiff is currently "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the person is, then he is not disabled under the Act. *Id*.  Step two asks whether Plaintiff has a physical or mental impairment, or a combination of impairments, that is severe and meets the Act's

duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). Step three considers the medical severity of the Plaintiff's impairments. 20 C.F.R. § 404.1520(a)(4)(iii). At this step, if Plaintiff is determined to have an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, Subpt. P., app. 1, and meets the duration requirements, he is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). On the other hand, if the Plaintiff is not found to be disabled at this step, his Residual Functional Capacity ("RFC") is assessed. 20 C.F.R. § 404.1520(a)(4), (e). Once the ALJ determines the RFC, the inquiry proceeds to step four. Step four compares Plaintiff's RFC to his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the Plaintiff can still do his past relevant work, he is not disabled. *Id.* Finally, at step five, the Plaintiff's RFC is considered alongside his "age, education, and work experience to see if he can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If he can make an adjustment to other work, he is not disabled; if he cannot, he is disabled. *Id.* At this step, it is the Commissioner who has the burden "to come forward with evidence of specific jobs in the national economy that the applicant can still perform." *Freeman v. Barnhart*, 274 F.3d at 608 (*citing Arocho v. Sec'y of Health & Human. Servs.*, 670 F.2d 374, 375 (1st Cir. 1982)).

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Mr. Torres-Cruz filed a Title II application for a period of disability and disability insurance benefits on September 26, 2023, with an alleged onset date of August 21, 2023. *See* Transcript of Social Security Proceedings ("Tr."), Docket No. 13 at 708-14). The claim was initially denied on March 20, 2024 (Tr. 480-91), and upon reconsideration on June 27, 2024. (Tr. 492-500). Plaintiff moved for a hearing on July 31, 2024. (Tr. 501-05). A telephone hearing was held on December 18, 2024, where Plaintiff appeared alongside

his attorney David L. Torres. (Tr. 83-116). Aracelis Figueroa, an impartial vocational expert ("VE"), was also present. *Id*. At the conclusion of the hearing, the ALJ granted Plaintiff 30 days to submit additional medical evidence, which was promptly tendered by his representative on December 23, 2024, and admitted into evidence as Exhibits 29F through 32F. (Tr. 1309-1345). A supplemental telephone hearing was later held on April 9, 2025. (Tr. 50-82). Present during said hearing were Plaintiff, his attorney, and impartial VE María de León. *Id*. The ALJ rendered her decision on April 21, 2025. (Tr. 20-49). I briefly summarize below the ALJ's written decision.

The ALJ determined at Step One of the five-step sequential process that Plaintiff did not engage in substantial gainful activity since the alleged onset date, that is, August 21, 2023. (Tr. 26). At Step Two, the ALJ found that Plaintiff had the following severe impairments: obesity, bilateral carpal tunnel syndrome, status-post release surgeries on both hands, severe obstructive sleep apnea, lumbar spine degenerative disc disease, generalized anxiety disorder, and major depressive disorder, recurrent, severe without psychotic symptoms. (Id.).

With respect to Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically listing 20 CFR 404.1520(d), 404.1525, and 404.1526. (Tr. 27-31). For this finding, the ALJ concluded that the record did not establish the medical signs, laboratory findings, or degree of functional limitation required to meet or equal the criteria of listings (1) 1.15 Disorders of the skeletal spine resulting in compromise of a nerve roots, (2) 1.18

Abnormality of a major joint(s) in any extremity, (3) 3.02 Chronic respiratory disorders, (4) 11.14 Peripheral neuropathy, or (5) 14.09 Inflammatory Arthritis. (Tr. 27-28).

As to Plaintiff's mental impairments, the ALJ found that he did not meet or medically equal the criteria in listings 12.04 and 12.06. (Tr. 29). To reach her conclusion, the ALJ considered if Paragraph B criteria was satisfied. To satisfy "Paragraph B" criteria, the mental impairment must result in one extreme limitation [2] or two marked limitations[3] in a broad area of functioning. (Id.). The ALJ assessed a moderate limitation in the area of understanding, remembering, or applying information because despite several challenges noted in his functional report, Plaintiff "reported that he did not need reminders to take care of his personal hygiene," and "demonstrated good appearance and adequate hygiene, a logical, relevant, and coherent thought process, and adequate attention and concentration" during mental examinations. (Tr. 29-30). As to Mr. Torres-Cruz' ability to interact with others, the ALJ determined he has only a mild limitation given he reported "having no problems getting along with family, friends, and neighbors, and no issues interacting with individuals in positions of authority" as well as a socially active lifestyle. (Tr. 30). A moderate limitation was assessed in the area of concentrating, persisting, and maintaining pace because despite difficulties in concentrating and paying attention, Mr. Torres-Cruz reported being able to follow both written and verbal

---

[2] An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. 20 C.F.R. pt. 404, subpt. P. app 1.

[3] A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. *Id.*

instructions, if he was able to read them multiple times or have them repeated to him, and mental examinations also indicated he possessed a logical, relevant, and coherent thought process, intact immediate, recent, and remote memory, and adequate attention, concentration, judgment and introspection. (Tr. 30). Lastly, regarding adapting or managing himself, the ALJ concluded Plaintiff has a mild limitation. Again, mental examinations "indicated the claimant demonstrated good appearance and adequate hygiene, a logical, relevant, and coherent thought process, and adequate attention, concentration, judgment, and introspection" despite reports of changes in behaviors, anxiety, depression and fears. (Id.).[4]

Next, and prior to moving to Step Four of the sequential process, the ALJ concluded that Plaintiff had an RFC

> to perform light work as defined in 20 CFR 404.1567(b) except lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; sitting for six hours, standing and/or walking for six hours. The claimant can push and pull as much weight as he can lift and carry limited to frequently in the bilateral upper extremities. The claimant has the residual functional capacity to perform less than full range of light work except frequently reaching overhead to the left and/or to the right. He can handle items frequently with the left hand and/or with the right hand. He has fingering limitations frequently with the left hand and/or the right hand. The claimant is limited to perceive attributes of objects, such as size, shape, temperature, or texture, by touching with skin, particularly that of fingertips limited to frequently on the left and/or on the right. The claimant can climb ramps and stairs occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant can occasionally work in high, exposed places. The claimant can occasionally have

---

[4]    The ALJ likewise found that the evidence fell short of establishing the relevant Paragraph C criteria. (Tr. 31).

> proximity to moving mechanical parts. The claimant can occasionally drive or operate machines or equipment. The claimant retains the capacity to understand, remember and carryout simple instructions. He can use judgment limited to perform simple work-related decisions and is limited to deal with occasional changes in a routine work setting.

(Tr. 31).

In addition, the ALJ explained that in determining the RFC, she considered all of Plaintiff's symptoms to the extent they can reasonably be accepted as consistent with the objective medical evidence as required by 20 CFR § 404.1529 and Social Security Ruling ("SSR") 16-3p, as well as medical opinions and prior administrative medical findings as mandated by 20 C.F.R. § 404.1520c. In following the required two-step process (first determining if the physical or mental impairments could reasonably be expected to produce the pain and/or symptoms alleged and, second, evaluating the intensity, persistence, and limiting effects of said symptoms to determine the extent to which they limit Plaintiff's work-related activities), the ALJ concluded after a thorough and detailed explanation (Tr. 31-40), that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 32). The ALJ then found that Plaintiff does not have any past relevant work (Step Four), and that considering his age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy he could perform (Step Five), such as Routing Clerk, Router, and Marker. (Tr. 40-42). Accordingly, the ALJ held that Plaintiff was not disabled under the Act. (Tr. 41).

On July 30, 2025, Plaintiff filed his Social Security Complaint, along with an application to proceed *in forma pauperis* before this Court. (Docket Nos. 1 and 2). On July 31, 2025, this case was formally referred to the undersigned for all further proceedings, including the entry of judgment. (Docket No. 7). Mr. Torres-Cruz filed his social security brief on January 14, 2026. (Docket No. 18). The Commissioner's brief was filed on February 12, 2026. (Docket No. 20). Plaintiff replied on February 25, 2026. (Docket No. 21).

### III.    ANALYSIS

Mr. Torres-Cruz raises two issues. First, he contends that the ALJ erred in rejecting all medical source opinions and "issuing an RFC based on a lay assessment of the raw medical evidence and without sufficient explanation for the conclusions reached." (Docket No. 18 at 10). As a sub issue, Plaintiff claims that the error includes not properly considering the evidence of his use of a cane. (Id.). Second, Plaintiff argues that the ALJ did not sufficiently consider his alleged pain and the limitations that stem from his physical impairments when discrediting his subjective allegations. The Commissioner responds that substantial evidence, including the opinions and findings of state agency medical consultants, support the RFC determination. Relatedly, the Commissioner posits that Mr. Torres-Cruz does not point to evidence that would establish greater limitations than those assessed by the ALJ. As to the ALJ's evaluation of Plaintiff's subjective symptoms, the Commissioner insists that substantial evidence supports the finding that Plaintiff's subjective complaints were not entirely consistent with the evidence in the record. I discuss each issue in turn.

## A.      Residual Functional Capacity

As noted, Mr. Torres-Cruz maintains that the ALJ erred because she supposedly discredited all medical source opinions and based the RFC determination on her own interpretation of the raw medical data. Plaintiff complains about the sufficiency and completeness of the ALJ's explanations. He also cries foul about the fact that his use of an assistive device (cane), did not factor at all in the RFC determination.

The Commissioner pushes back, contending that Plaintiff is incorrect when he says that no medical opinions support the ALJ's decision. According to the Commissioner, the RFC is indeed supported by the findings of the state agency medical consultants, who the ALJ found partially persuasive only because they assessed fewer limitations than the ALJ ultimately adopted. The Commissioner further argues that Plaintiff has failed to establish that a cane was medically necessary under Social Security Ruling 96-9p, which requires "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." (Docket No. 20 at 6). Although Plaintiff cites a prescription for a four-pronged cane (Tr. 281; 1096), the Commissioner notes that "the prescription does not specify the circumstances for which the cane is needed." (Docket No. 20 at 6).

After careful consideration of the arguments of the parties and the record, I find that the Commissioner has the better argument. To be sure, in evaluating a claimant's RFC, an ALJ cannot rely on raw medical data; rather, he or she must look to physician's opinions to translate that evidence into functional terms. *See Vega Valentín v. Astrue*, 725 F. Supp. 2d 264, 271 (D.P.R. 2010) (citing *Berríos López v. Sec'y of Health & Human Servs.*, 951 F.2d 427, 430 (1st Cir. 1991) and *Rosado v. Sec'y of Health & Human Servs.*,

807 F.2d 292, 293 (1st Cir. 1986)). Here, the only medical sources in the record that provided opinions on exertional and non-exertional limitations were state-agency consultants Dr. Cindy J. Ramírez and Dr. Brenda Concepción.[5] The ALJ credited their opinions for the most part, finding that the opinions were "supported by their perspective [sic] analyses of the evidence, including the claimant's surgical history, obesity, and use of a cane [and that] [t]heir conclusions [were] generally consistent with the overall medical record, particularly the most recent documentation from the SIF, which reflects some improvement in the claimant's condition." (Tr. 37). Where the ALJ partially disagreed with said opinions, it was to impose greater RFC restrictions in order to give Mr. Torres-Cruz the benefit of the doubt. *See Bowden v. Colvin*, No. 13-201, 2014 U.S. Dist. LEXIS 57695, 2014 WL 1664961, at *4 (D. Me. Apr. 25, 2014) ("[A] claimant may not obtain a remand on the basis of an RFC that is more favorable to him or her than the evidence would otherwise support."). What's more, none of the treating sources offered opinions regarding Plaintiff's physical and mental limitations and how they impacted his ability to perform work-related activities. Therefore, the contention that the ALJ's RFC

---

[5]     In her decision, the ALJ noted as follows:

> The undersigned has considered the opinions of Dr. Cindy J. Ramírez, and Dr. Brenda Concepción, who are doctors hired by the state agency. Dr. Ramírez initially reviewed the record on February 26, 2024, and Dr. Concepción reviewed the record on June 26, 2024, at the reconsideration level. Dr. Ramírez opined the claimant was limited to the light exertional level, had postural and manipulative limitations, and no visual, communicative, or environmental limitations. However, Dr. Concepción provided a similar assessment of the claimant s limitations, with the exception that she also identified environmental restrictions (Exs. 1A at 6-8; 3A at 6-9).

(Tr. 36).

11

determination is based on her own interpretation of raw medical data is meritless. *See Rodríguez v. Sec'y of Health & Human Servs.*, 893 F.2d 401, 403 (1st Cir. 1989) (finding that the ALJ did not impermissibly assess RFC himself, but instead relied on the RFC assessment provided by the non-examining medical advisor); *see also Valentin-Rodriguez v. Comm'r of Soc. Sec.*, No. 12-CV-1488 MEL, 2014 U.S. Dist. LEXIS 83144, 2014 WL 2740410, at *7 (D.P.R. June 17, 2014) (finding no indication that the ALJ interpreted raw data in determining a nuanced RFC for the plaintiff, instead of adopting completely either (1) the RFC determined by the agency doctors, or (2) the RFC determined by the treating physician).

I also find that there was no error committed by the ALJ when she did not consider the necessity of an assisted device when determining the RFC. The record shows that the ALJ considered Mr. Torres-Cruz' use of a cane as part of the overall analysis. For instance, the ALJ explained:

> As for the use of the cane, although the claimant has been seen using one, the file contains no documentation of balance problems or a history of falls. Notably, while the claimant alleges difficulty with hand use his manipulative tasks, there is no evidence of difficulty grasping or holding the cane. Moreover, the claimant did not report using a cane during visits to his sleep specialist (Exs. 10F; 24F) or while receiving treatment at INSPIRA. He was also not observed using a cane during consultative examinations conducted by Dr. Roberto Irizarry-Rivera and Dr. Claudio Santos-García. Although the claimant reported beginning to use the cane in March 2024, Dr. Santos-García observed only two months earlier that his gait was normal, and that he did not rely on walls or require assistance for support.

(Tr. 36). However, the use of a cane did not need to be considered as part of the RFC determination because Mr. Torres-Cruz has failed to show that the use of a hand-held assistive device was medically required.

To find that a hand-held assistive device is "medically required," SSR 96-9p, 1996 SSR LEXIS 6 requires "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, 1996 SSR LEXIS 6 (S.S.A. July 2, 1996), 1996 WL 374185. Moreover, there must be (1) medical documentation establishing the need for said device to aid in walking or standing and (2) the medical documentation must also "describ[e] the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 SSR LEXIS 6, [WL] at *7. "If both requirements are met, the ALJ must conclude that the cane is medically necessary and consider that limitation in [her] decision." *Linabel G.N. v. Comm'r of Soc. Sec.*, No. 24-cv-1016 (GLS), 2025 WL 957732, 2025 U.S. Dist. LEXIS 62966, at *&20 (D.P.R. Mar. 31, 2025) (citing *Simpkins v. Berryhill*, 2017 U.S. Dist. LEXIS 140373, 2017 WL 3821684, at *3 (E.D. Ky. Aug. 31, 2017)).

As stated, Plaintiff underscores that the record contains a prescription for a "quad cane", (Tr. 281; 1096), and that he has been observed using one. Putting aside the fact that the prescription is undated[6] (something that the Commissioner highlights), the

---

[6]    In his reply, Plaintiff mentions that the issue was discussed at the hearing before the ALJ and that the record shows the prescription "was faxed to the agency on March 11, 2024." (Docket No. 21 at 4; see also Tr. 114). I need not address the issue of the date as the argument fails on the merits.

13

prescription is silent as to the circumstances for which it was needed. *See Ostolaza v. Comm'r of Soc. Sec.*, No. 23-cv-1364 (MEL), 2024 WL 4052157, 2024 U.S. Dist. LEXIS 160966, at *9-10 (D.P.R. Sept. 5, 2024) (finding no error where the prescription vaguely stated "Please give cane for walking" but provided no other information thus failing to describe the circumstances for which it was needed). And the fact that Plaintiff was observed using a cane to walk does not establish, without more, the need for a hand-held assisted device. *Id.* at *10 (citing *Figueroa v. Comm'r of Soc. Sec.*, No. CV 19-1069, 2020 U.S. Dist. LEXIS 265221, 2020 WL 13481006, at *5 (D.P.R. Sept. 30, 2020)).

## B.    Plaintiff's Subjective Allegations

Mr. Torres-Cruz argues that remand is warranted because the ALJ "did not sufficiently consider' his subjective allegations of pain and limitations. (Docket No. 18 at 16). The Act specifically provides that a claimant will not be considered disabled unless he or she furnishes medical and other evidence, such as medical signs and laboratory findings, showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). Pursuant to Social Security Ruling 16-3p, ALJs must consider all of the evidence of a claimant's subjective statements about his or her symptoms, including pain, and determine "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence." *See* SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 4790249, at *49462; 20 C.F.R. § 404.1529(c)(3). The ALJ may not disregard a claimant's statements about the intensity, persistence, and limited effects of symptoms "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms." SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 4790249, at *49465. However,

subjective statements regarding symptoms cannot, by themselves, support a finding of disability. 20 C.F.R. § 404.1529(a). Relevantly, in evaluating the intensity, persistence, and limiting effects of a person's symptoms, SSR 16-3p requires that the ALJ consider, among other things, a claimant's daily activities. 2016 SSR LEXIS 4, 2017 WL 5180304, at *7.

According to Mr. Torres-Cruz, the ALJ did not properly consider his allegations of severe lower extremity pain and cramping. He primarily points to MRI findings obtained in the context of Dr. Meléndez-Gómez's clinical documentation of loss of hair with pain, numbness, and tingling of the lower extremities due to peripheral vascular disease and lower back pain radiating to the lower limbs, arguing that "the decision does not explain why Plaintiff's allegations of significant lumbar spine and leg pain and limitations were rejected in the context of this objective and clinical evidence." (Docket No. 18 at 17-18). Plaintiff further claims that he "continued to experience hand pain when trying to pick up items, had difficulty maintaining grip on items such as a glass or toothbrush, or turning a doorknob." (Id. at 18). He faults the ALJ for allegedly not explaining why these "allegations of significant lumbar spine and leg pain and limitations were rejected in the context of this objective and clinical evidence." (Id.). By like token, Mr. Torres-Cruz contends that it was error for the ALJ to consider what he labels "the residual post-surgical limitations affecting Plaintiff's hands." (Id.). Finally, Plaintiff claims that the ALJ erred in considering his daily activities to undermine his allegations of significant pain and limitations. (Id. at 19).

In response, and as to the lumbar spine and lower extremity pain, the Commissioner submits that the ALJ did not err in relying on Plaintiff's daily activities,

noting that Plaintiff "acknowledged that he could sweep the floor, wash dishes, fold clothes, cook twice per week, attend church twice per week, and drive," and that disability adjudication may properly rely on circumstantial evidence, including daily activities, to infer an ability to work. (Docket No. 20 at 9-10). As to the subjective complaints of manipulative limitations, the Commissioner says that the ALJ was entitled to consider Plaintiff's improvement following his carpal tunnel surgeries, and that the ALJ in fact found Plaintiff to have "continuing manipulative limitations," which were incorporated into the RFC. (Id. at 9). The Commissioner emphasizes that Plaintiff, who bears the burden in this case, fails to offer evidence supporting a more restrictive RFC. (Id.).

After careful consideration of the record, I find that the ALJ adequately explained the basis for her finding that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence of record. As the ALJ reasoned:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the frequency or extent of the treatment sought by him is not consistent with the degree of his subjective complaints. The record showed sparse treatment notes without continuance and consistency after the alleged onset date which indicated that the claimants physical and mental impairments are not as debilitating as he alleged.
>
> ****
>
> Because the record lacks corroborating opinions that support the claimant's allegations of his exertional and non-exertional limitations that are caused by his severe physical and mental impairments, the undersigned do [sic] not find the claimant's statements to be fully consistent with the medical evidence of the record.

(Tr. 39). This explanation, together with the ALJ's reliance on Plaintiff's reported daily activities and his post-surgical improvement, satisfies the substantial evidence standard with respect to the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p. The ALJ did discuss the findings of the MRI in concluding that Plaintiff suffers from lumbar spine degenerative disc disease, a severe impairment, and subsequently in her decision noting that it "further confirmed multilevel degenerative changes" in the lumbar spine. (Tr. 26, 28 and 33). She was also entitled, as the Commissioner correctly points out, to consider the improvement in the condition following the hand surgeries, *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v), and Plaintiff's daily activities to the extent they showed inconsistency with the subjective allegations. *See Patoski v. Berryhill*, 320 F. Supp. 3d 283, 290-92 (D. Mass. 2018).

Simply put, substantial evidence supports the ALJ's determination that Plaintiff's reported symptoms were not entirely consistent with objective medical evidence in the record. Given the deferential standard of review, this conclusion can hardly be deemed error. *See Coskery v. Berryhill*, 892 F.3d 1, 7 (1st Cir. 2018); *see also Berrios-Lopez v. Secretary of HHS*, 951 F.2d 427, 429 (1st Cir. 1991). Objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *5. Relevant to this case, there is a significant amount of objective medical evidence that conflicts with Plaintiff's subjective statements, creating inconsistencies. And an ALJ may discount subjective complaints where there is evidence to directly rebut Plaintiff's testimony. *See Sacilowski v. Saul*, 959 F.3d 431, 441 (1st Cir. 2020).

### IV.    CONCLUSION

In view of the above, I find that the ALJ's decision that Plaintiff is not disabled within the meaning of the Act is supported by substantial evidence. For that reason, the Commissioner's decision is **AFFIRMED.** Judgment shall be entered.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 31st day of July, 2026.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE
